1

2          THE HONORABLE JAMES L. ROBART

3

4

5

6

7              UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
8                      AT SEATTLE

9    DARREN DONAHUE,

10                   Plaintiff,              No. 2:17-cv-00023-JLR

11          v.                               DECLARATION OF DARREN
                                             DONAHUE IN SUPPORT OF
12   RED ROBIN INTERNATIONAL, INC., a        PLAINTIFF'S OPPOSITION TO
     Nevada Corporation; RED ROBIN GOURMET   DEFENDANTS' MOTION FOR
13   BURGERS, INC., a Delaware Corporation; and  SUMMARY JUDGMENT
     HAROLD HART and his marital community,
14                                           NOTE ON MOTION CALENDAR:
15                   Defendants.             April 13, 2018

16

17

18

19

20

21

22

23

24

25

26

**THE BLANKENSHIP LAW FIRM, P.S.**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

Case 2:17-cv-00023-JLR   Document 44   Filed 04/09/18   Page 2 of 8

I, Darren Donahue, being duly sworn under penalty of perjury under the laws of the United States and State of Washington do depose and say:

1.     I am over the age of eighteen and competent to testify on the matters set forth herein based on my own personal knowledge.

2.     I am the Plaintiff in the above captioned matter.

3.     This declaration is only intended to address some of my background with Red Robin and the issues Red Robin claims led to my termination. It is not intended to be a complete recitation of all of the facts supporting my claims in this case.

**BACKGROUND PERFORMANCE AT RED ROBIN**

4.     I was hired by Defendant Red Robin in 2008 as an Assistant General Manager in Training.

5.     After I completed my initial training, I became a full-time General Manager for Red Robin. As a General Manager, I was in charge of an entire restaurant. During my employment with Red Robin, I managed several different restaurants in Western Washington.

6.     The first restaurant I managed for Red Robin was the Tacoma, Washington location, which I began managing in September 2008.

7.     Since I started with Red Robin in 2008, Red Robin ranked restaurants based on categories of performance. Prior to 2011, results were shown on what was called an RYG report (Red, Yellow, Green). These reports told us what our store was ranked nationally, but did not show what other stores rankings were. The rankings were based on objective measures.

8.     Since 2011, Red Robin has ranked its restaurants based on "Scorecards" which quantify and measure several different criteria to determine how all Red Robin restaurants are performing nationally. These Scorecards specifically measured eleven different categories of store performance, including : (1) Total Discounts per Guest; (2) Royalty Sales; (3) Appetizer, Dessert, & Beverage Order Rates; (4) Overall Restaurant Experience (40 responses minimum); (5) Negative Guest Complaints as a % of Total Guest Counts; (6) FOH Standard Hours; (7)

DECLARATION OF DARREN DONAHUE IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT  (Cause No. 2:17-cv-00023-JLR)
Page 1

**THE BLANKENSHIP LAW FIRM, P.S.**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

HOH Standard Hours; (8) Total COGs Variance to Theoretical; (9) NIBO X %; (10) Hourly

Turnover % 3 Period Annualized; and (11) Total Gross Sales vs. Budget.

9.      The Scorecards were color coded. If my restaurant was colored green for each

category and/or overall, then the restaurant was considered to be performing well and above

average. Yellow meant that we were meeting expectations but had room to improve. Red

meant we were not performing satisfactorily.

10.     On each Scorecard, we could see where we ranked against all other Red Robin

restaurants nationally. They were sent out on a rolling basis and ranked each store for a total of

13 periods each year.

11.     As a General Manager I was responsible for making sure my restaurants were

performing on the Scorecards. My performance on Scorecards was directly related to how my

performance was viewed as a General Manager. Scorecard performance was pushed by upper

management for all GMs, and we were encouraged to share the store's results with our team

members on a weekly basis.

12.     When I took over the Tacoma Restaurant, it was ranked the second worst in the

company as measured on what was called the "Bottom 50 report." After I took over, me and

my team managed to completely turn the restaurant around and about six months later were

ranked number 17 nationally.

13.     In 2009, Red Robin asked me to help open a new Lakewood, Washington

restaurant they were starting at the Lakewood Town Center. I transferred to Lakewood and,

again with the help of my team, was able to successfully open the restaurant and maintain great

results for nearly two years as the restaurant's General Manager.

14.     In 2011, I was transferred to Red Robin's Auburn, Washington restaurant.

When I took over at Auburn it was also a struggling restaurant. Similar to the Tacoma

restaurant, Auburn was ranked approximately 331 out of 337 restaurants nationally on the

Scorecards when I took over as General Manager, sixth from the bottom.

DECLARATION OF DARREN DONAHUE IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT  (Cause No. 2:17-cv-00023-JLR)
Page 2

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

15.     My team and I completely turned the Auburn restaurant around as well and made it into one of the most successful and profitable restaurants in the company.

16.     In 2012, I was asked to go to Red Robin's Southcenter restaurant, to help overhaul that location. Red Robin had just fired the Southcenter GM and the company had asked me to go there to help get it up to Red Robin's standards.

17.     In 2013, when I learned that the Bellevue restaurant was also struggling, I volunteered to help go there and improve it. I spent about five weeks hiring and training a new team in Bellevue and I earned a bonus for my efforts.

18.     I continued to manage the Auburn restaurant from 2011 until I was terminated on June 15, 2015. Throughout that time, the Auburn restaurant was a strong, profitable restaurant and was consistently ranked one of the highest in its region and division for Red Robin.

## ISSUES LEADING TO MY TERMINATION

19.     Red Robin has falsely claimed that I was fired for my handling of an employee issue that arose in October 2014.

20.     The issue involved a part-time server who had been working at Red Robin's downtown Seattle location. The downtown Seattle restaurant had to be shut down for several months due to the tunnel project (Big Bertha) down on Seattle's waterfront.

21.     As a result, employees from the downtown Seattle restaurant were being laid off or temporarily transferred to other locations. In October 2014 we "borrowed" a server from the Seattle location, Chris Ferguson. In Red Robin's system, you could "borrow" employees from other locations temporarily. The downtown Seattle GM had told me he was a good employee and asked me to borrow him in the system, and that he would later transfer him to my restaurant.

22.     Mr. Ferguson worked 3 shifts for the Auburn restaurant without incident. Because he was "borrowed" in the system, he was able to clock in under his own card.

DECLARATION OF DARREN DONAHUE IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT  (Cause No. 2:17-cv-00023-JLR)
Page 3

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

23.     On October 12, 2014, when Mr. Ferguson came into the restaurant, he was unable to clock in. The managers working at Auburn that day looked for him in Red Robin's system and could not find him in the computer. I was not working that day. The managers who were working, without consulting me, decided to let Mr. Ferguson work on another manager's card. I had no idea that this had happened at the time, and nobody in my restaurant brought it to my attention.

24.     I did not know about any issues related to Chris Ferguson until November 4, 2014. I never transferred Mr. Ferguson from the downtown Seattle location to any other restaurant. I never transferred Mr. Ferguson to Henrietta, New York. However, I have since learned from attending depositions and reviewing the documents that we received from Red Robin in this case, that Mr. Ferguson was transferred by Rick Blankenship, the GM at the downtown Seattle location, to Henrietta, N.Y. *Exh*. PP.

25.     Numerous people in payroll had seen documents in September 2014 showing that Ferguson was going to be transferred by Rick Blankenship, long before any issues occurred with Chris Ferguson in October 2014. The transfer went through on October 11, 2014, but a mistake was made and Ferguson was transferred to New York instead of Auburn. I had no ability to transfer Chris Ferguson. I told Claire Simpson that I believed this is what happened with Chris Ferguson before I was fired.

26.     Because of Red Robin's failure to correctly transfer Mr. Ferguson in the system, when he tried to clock in at Auburn he could not. Again, I was not at the restaurant or working when this happened.

27.     Mr. Ferguson worked three more shifts at the Auburn restaurant before walking off the job on October 23, 2014. I was unaware of any issues he had with transferring to Auburn or clocking in for his shift prior to him walking off the job.

28.     On November 4, 2014 I was contacted by Red Robin's payroll department and told that Mr. Ferguson had called to say that he had not been paid for his shifts at the Auburn

DECLARATION OF DARREN DONAHUE IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT  (Cause No. 2:17-cv-00023-JLR)
Page 4

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

store. Nobody told me how many hours he was missing. Defendants payroll asked me to get in touch with Mr. Ferguson to find out how many hours he was missing.

29.     I immediately called Mr. Ferguson on November 4 to determine what had happened and how many hours he was missing. I left him a message. Mr. Ferguson did not call me back until November 11, 2014. He told me he was missing 15 hours.

30.     I had limited to no experience filling out a punch edit form before this issue arose for a team member who claimed to be missing hours. I took seriously getting my team member paid on time and correctly.

31.     I specifically worked with Payroll, including Payroll Specialist Mara Coursey and Lead Payroll Specialist Megan Mantelli, to get Mr. Ferguson paid. I originally asked payroll if I could pay Mr. Ferguson under the Team Meetings category. When they told me he needed to be paid as a server, I filled out the punch edit forms for him to be a server.

32.     I asked if I could pay him under Team Meetings, because the hours took place in the previous Scorecard period. If I was to pay him under the server department we would have lost half a point on the scorecard for period 12. If the hours were properly placed in period 11, it would not have affected us at all. So, in an effort to accurately represent the restaurant results, I asked Megan Mantelli (Lead Payroll Specialist) if we could put the hours under Team Meetings. She said no, so I submitted the paperwork with his job category under the server department as she had directed.

33.     I assumed that since payroll assisted with this issue, reviewed the paperwork, was involved every step of the way, and thanked me for my assistance, that I had done it correctly and that the issue was closed.

34.     The next time I even thought about the Chris Ferguson incident was on June 8, 2015 when Harold Hart and Marilee Smith came to my restaurant and started questioning me about it.

DECLARATION OF DARREN DONAHUE IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT  (Cause No. 2:17-cv-00023-JLR)
Page 5

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

35.     I struggled to answer their questions in great detail because they were asking me about an issue that I believed was minor and had been resolved seven months earlier with the assistance of payroll. I had barely worked with Mr. Ferguson (maybe part of one shift) and I simply did not remember in any detail what had happened.

36.     I never told anyone that I had allowed Mr. Ferguson to clock in under another employee's card because I didn't. I could not have allowed this to happen since I was not at the restaurant when it occurred.

37.     When I was questioned about the incident seven months later, I told Harold Hart and Marilee Smith that I really could not recall what had happened with Mr. Ferguson in any detail because it had happened so long ago. Anything I did recall, was based on my memory of working with payroll to get Mr. Ferguson paid.

38.     I have read the "notes" of my conversation with Harold Hart and Marilee Smith that Defendants have produced in this case. They do not accurately reflect what I said to them during their questioning of me on June 8, 2015.


I declare under penalty of perjury under the laws of the United States and Washington State that the foregoing is true and correct to the best of my knowledge and belief.


SWORN TO this 9th day of April, 2018.

By: _____

DARREN DONAHUE

DECLARATION OF DARREN DONAHUE IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT  (Cause No. 2:17-cv-00023-JLR)
Page 6

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## DECLARATION OF SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington that on the date and in the manner listed below I caused delivery of a true copy of the attached document to the following attorneys for Defendants:

Suzanne Kelly Michael, WSBA No. 14072    ☐ by Electronic Mail
Catharine M. Morisset, WSBA No. 29682    ☐ by Facsimile Transmission
Margaret Burnham, WSBA No. 47860      ☐ by First Class Mail
Fisher & Phillips LLP                      ☐ by Hand Delivery
1201 Third Ave, Suite 2750            ☐ by Overnight Delivery
Seattle, WA 98101                     ☒ by Notification via E-filing System
Telephone: (206) 682-2308
Facsimile: (206) 682-7908
Email:  smichael@fisherphillips.com
          cmorisset@fisherphillips.com
          mburnham@fisherphillips.com

*Attorneys for Defendants*

DATED this 9th day of April, 2018, at Seattle, Washington.

 s/ Richard E. Goldsworthy
Richard E. Goldsworthy, WSBA No. 40684
The Blankenship Law Firm, P.S.
1000 Second Avenue, Suite 3250
Seattle, WA 98104
Telephone: (206) 343-2700
Facsimile: (206) 343-2704
Email:  rgoldsworthy@blankenshiplawfirm.com

DECLARATION OF DARREN DONAHUE IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT  (Cause No. 2:17-cv-00023-JLR)
Page 7

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700